WHITE SEWING MACH. CO. v. HUTCHENS et al.

(Supreme Court, Appellate Division, Third Department. July 8, 1902.)

1. ACTION ON NOTE—APPLICATION OF COLLATERAL.
    Where a purchaser of machines from a manufacturer agreed with the latter as to the terms under which the manufacturer should receive notes as collateral, and subsequently the purchaser sent a renewal note, and collateral notes to secure the same, but the manufacturer refused to renew, or to apply the collateral notes to the note sought to be renewed, but claimed to hold the collateral notes under the agreement, and refused, on demand, to return them, but converted the same, in a suit on the note which the purchaser had attempted to renew the purchaser was entitled to the credit for the amount of the collateral notes.

2. APPEAL—DISPOSITION OF CAUSE.
    A new trial will not be granted where no substantial right of the appellant is involved.

Appeal from special term, Ontario county.

Action by the White Sewing Machine Company against Alice M. Hutchens and another. From a judgment for defendants, plaintiff appeals. Affirmed.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

Henry M. Field, for appellant.
N. E. Hutchens, for respondents.

CHASE, J. The elaborate briefs of counsel discuss very many important principles of law, but the real controversy is as to whether the plaintiff or defendants shall recover the taxable costs of the action. Plaintiff is a foreign corporation engaged in the manufacture and sale of sewing machines. The defendant Alice M. Hutchens is engaged at Canandaigua, N. Y., in the business of selling sewing machines, bicycles, and musical merchandise. The defendant Charles H. Hutchens is in the exclusive management of the business as agent for Alice M. Hutchens. On the 23d day of August, 1900, a representative of the plaintiff came to Canandaigua; and Charles H. Hutchens, as such agent, purchased of him 10 sewing machines on credit, and entered into a verbal contract for the sale of sewing machines and accessories for the plaintiff. By the agreement made that day the defendant Alice M. Hutchens was given six months' credit for the purchase price of seven of the machines so purchased, and she at that time gave her note for $63, the purchase price of the other three sewing machines so purchased. The note so given is dated August 23d, and is payable 12 months after date, and refers to an agreement on the back of the note, which agreement so referred to is to the effect that in case the payee of the note shall, before the maturity thereof, purchase of the plaintiff 50 White machines, including the machines purchased that day, then and in that case the note so signed would be canceled and surrendered. Thereafter, and before September 6th, the 10 sewing machines were received, and the invoices accompanying their shipment show that the 7 machines were sold on six months' credit, 1 per cent.

¶ 1. See Bills and Notes, vol. 7, Cent. Dig. § 1248.

discount if paid in 30 days, and that the 3 machines were sold subject to the contract on the back of the note. On the 3d day of September the plaintiff and said Alice M. Hutchens entered into a contract known as the "collateral note agreement," stating upon what terms plaintiff would receive collateral notes from defendant Alice M. Hutchens. On the 6th day of September the defendants executed and delivered to the plaintiff a note for $153, dated that day, for the 7 sewing machines purchased of the plaintiff on the 23d day of August. This note is payable in six months. There was no consideration for Charles H. Hutchens executing said note. Alice M. Hutchens also purchased of a former agent of the plaintiff at Canandaigua a large number of sewing machines manufactured by the plaintiff, and, in part payment for such purchase, delivered to such former agent three promissory notes,—one of $25, due June 1, 1901; one of $25, due September 1, 1901; and one of $26.25, due December 1, 1901,—and also, as further part payment, she delivered to said former agent three promissory notes, of $10 each, made by one N., payable to and indorsed by Alice M. Hutchens, to become due July 15, 1901, October 15, 1901, and January 15, 1902, respectively. These several notes given to the former agent of the plaintiff were subsequently transferred by said former agent to the plaintiff. No further purchases were made by the defendant of the plaintiff. In February, 1901, the plaintiff notified the defendant Alice M. Hutchens that her note of $153 would fall due March 6th. On the 20th day of February, Charles H. Hutchens, as such agent, wrote to the plaintiff, asking for the privilege of renewing the $153 note for four months, to which letter the plaintiff responded, in substance refusing to renew the note as requested, but offered to renew one-half thereof if the balance was paid. On the 1st day of March, 1901, the defendant Charles H. Hutchens, as such agent, wrote to the plaintiff, inclosing a renewal note for $153, with three notes of third parties as collateral security for the same,—one of $16, due July 1, 1901; one of $45 and one of $35, each due November 1, 1901. Nothing further was heard from the plaintiff in regard to the renewal note until some time after the first note became due. On the 14th day of March the plaintiff wrote to Charles H. Hutchens, declining to renew the note. The renewal note was returned in the letter, but the collateral notes were retained. The makers of the collateral notes were responsible, and the notes were valid obligations. On the 15th day of April, 1901, the defendant paid the plaintiff on the past-due note the sum of $40. On the 19th day of June the plaintiff wrote Charles H. Hutchens, and, referring to its representative, Mr. Jones, says, "According to his report,  *  *  *  you take the ground that customer notes to the amount of $96 which accompanied your renewal were accepted by us as a direct credit," and then substantially denied that it retained the collateral notes as a payment, and further states: "Our future action in the matter will be guided entirely by Mr. Jones' report, and we will grant you until July 1st to settle the note; and, in the event of your failure to take it up, the same will be passed to our legal department for immediate suit in justice's court." About the 1st of July Mr. Jones called upon Charles H. Hutchens. Mr. Hutchens said to him that he understood that the note was practically

settled, and then tendered to him the amount of the note, less the amount of the collateral notes so retained by the plaintiff. Mr. Jones stated that the collateral notes had not been applied, and that plaintiff was going to retain the collateral as security for other indebtedness, even if the note was paid. Hutchens said: "Very well, then. You will have to sue it. You can't hold my collateral, and hold my note besides." Within a few days thereafter this action was brought on the $153 note. The three notes sent plaintiff March 1st were not sent pursuant to the collateral agreement, but for a special purpose. Plaintiff understood that they were sent for a special purpose, as shown by its reply declining to renew the note, in which it says, "The inducements offered us to grant you this favor are not such as to warrant our complying with the same." The plaintiff not only declined to credit the three notes on the past-due note, but retained them; claiming to do so as a matter of right. The answer alleges as a defense and as a counterclaim that the three notes were sent to the plaintiff for the purpose of renewing the note in suit; that the plaintiff refused to renew the note in suit, and returned the same to the defendants, and "neglected and refused to return the three several notes delivered therewith, and offered as collateral thereto, which were to be held by it as collateral to such renewal note, and for no other purpose, and, in violation of the rights of the defendants in the premises, retained the same and converted them to its own use, whereby it became, was, and now is justly indebted unto the defendant Alice M. Hutchens in the sum of $96.

The court found that "before the commencement of this action the defendant Alice M. Hutchens duly demanded the return to her of said three collateral notes by the plaintiff, which demand was refused." The court also found that the plaintiff claimed to retain such notes under said collateral agreement. We cannot say that the letters of the plaintiff, and its action following the conversation with its representative, did not justify such findings. Plaintiff clearly insisted upon its right to retain the three notes under the collateral agreement, and it was wrong in such claim. It should have applied the amount of these notes on the note now in suit, or returned them to the defendants. One of the three notes was actually paid to the plaintiff and applied before the suit was brought, and the other two notes were converted to its use. The two notes so converted to its use were worth $80, besides interest, and they were actually paid to the plaintiff before this action was tried. All of the other notes mentioned, except two, of $26.25 and $10, respectively, were paid prior to the trial of this action. The complaint was dismissed as against Charles H. Hutchens, and judgment was directed in favor of the plaintiff against the defendant Alice M. Hutchens in the sum of $14.52. Concededly, apart from the question of costs, Alice M. Hutchens did not then owe the plaintiff more than $14.52. The findings of the court fully sustain the judgment, and they are not against the weight of evidence. If we should find that the evidence does not justify the finding that the defendant Alice M. Hutchens duly demanded the return to her of said three collateral notes by the plaintiff, which demand was refused, a new trial should not be granted, as no substantial right of the plaintiff is in-

volved. 2 Cycl. Law & Proc. p. 535; Funk v. Publishing Co., 76 Hun, 497, 27 N. Y. Supp. 1089; Id., 152 N. Y. 619, 46 N. E. 292.

The judgment should be affirmed, with costs. All concur.